JOHN M. RUNFOLA (CSBN 096058)
Pier 9, Suite 100
San Francisco, CA  94111
Telephone:   (415) 391-4243
Facsimile:    (415) 391-5161
Email: john@johnmrunfola.com

NAOMI CHUNG (CSBN 283743)
Pier 9, Suite 100
San Francisco, CA  94111
Telephone:  (415) 746-9080
Facsimile:  (415) 484-7054
Email: naomichung@defenseaid.com

Attorneys for Defendant
CLIFTON BURCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLIFTON BURCH,<br><br>Defendant. | Case No. 17-CR-00175-CRB-5<br><br>**DEFENDANT CLIFTON BURCH'S MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CRIM. PRO. RULES 33**<br><br>**Hearing Date: To be Set on August 28, 2019**<br><br>**Time: 1:30 p.m.**<br><br>**Court: Hon. Charles R. Breyer** |

1

**TABLE OF CONTENTS**

2

NOTICE OF DEFENDANT'S MOTION A NEW TRIAL ................................................................. 1

MEMORANDUM OF LAW ........................................................................................................ 5

I.      INTRODUCTION ........................................................................................................... 5

II.     RELEVANT FACTS ....................................................................................................... 5

III.    LEGAL STANDARD ...................................................................................................... 7

IV.     ARGUMENT .................................................................................................................. 7

   A.   Relevant Law ............................................................................................................. 8

   B.   Prior Counsel's Failure to Properly Advise Mr. Burch During Pre-Trial Negotiations
        Prevented Mr. Burch From Making A Reasonably Informed Decision Whether to Accept Plea
        Offer or Proceed to Trial. .............................................................................................. 9

        *i.    Prior counsel's erroneous advice deprived Mr. Burch of his right to make a reasonably
        informed decision as to whether he should accept the government's plea offers or proceed
        to trial.* ...................................................................................................................... 10

        *ii.   Given the overwhelming evidence against Mr. Burch and the potential penalties
        involved, prior counsel was ineffective for advising Mr. Burch to reject the government's
        plea offers and to proceed to trial without a valid defense against the charges of
        conspiracy.* ................................................................................................................ 14

   C.   The Appropriate Remedy for Trial Counsel's Failure to Properly Advise Mr. Burch During
        Pre-Trial Negotiations is to Require the Government to Reinstate Its Diversion
        Offer or Order an Evidentiary Hearing ........................................................................... 21

V.      CONCLUSION ............................................................................................................ 21

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

<u>CASES</u>

*Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. 1981)................................................10

*Boria v. Keane*, 99 F.3d 492, *clarified on reh'g*, 90 F.3d 36 (2d Cir. 1996) .......................12

*Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995)................................................13

*Gideon v. Wainwright*, 372 U.S. 335 (1963) ........................................................................21

*Jones v. Cunningham*, 313 F.2d 347 (4th Cir. 1963), *cert. denied* 375 U.S. 832 (1965) ...........................................................................................................................20

*Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) ...........................................................10, 22

*Magana v. Hofbauer, 263 F.3d 542 (6th Cir. 2001)*.......................................................12, 13

*McMann v. Richardson*, 397 U.S. 759, 771 (1970)) ...........................................................10

*Missouri v. Frye*, 566 U.S. 182 L.Ed.2d 379 (2012)...........................................................10

*Nunes v. Mueller*, 350 F.3d 1045, 1052 (9th Cir. 2003).....................................................10

*Padilla v. Kentucky*, 559 U.S. 356, 373 (2009).................................................................10

*State v. Fritz*, 569 N.W.2d 48 (Wis. Ct. App. 1997) ...........................................................13

*Strickland v. Washington*, 466 U.S. 668, 686 (1984)................................................8, 13, 20

*Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002)......................................................10

*Turner v. Tennessee*, 858 F.2d 1201 (6th Cir. 1988) ..........................................................13

*United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992) ...............................................7

*United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)............................................10

*United States v. Cronic*, 466 U.S. 648 (1984)...................................................................21

*United States v. Daly*, 974 F.2d 1215, 1218 (9th Cir. 1992). ................................................8

*United States v. Day*, 285 F.3d 1167 (9th Cir. 2002)..........................................................12

*United States v. Del Muro*, 87 F.3d 1078 (9th Cir. 1996)...................................................9, 22

*United States v. Hester*, No. 14CR388-MMA-5, 2017 WL 2972564, at *4 (S.D. Cal. July 12, 2017)...........................................................................................9

*United States v. Jensen*, CR-08-054-JLQ, 2010 WL 3809988 (E.D. Wash. Sept. 27, 2010) ....................................................................................................9

*United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989) ................................................7

*United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)..................................................7

*United States v. Logan*, 861 F.2d 859, 864 (5th Cir. 1988)......................................................9

*United States v. Quiroz*, 228 F. Supp. 2d 1259 (D. Kan. 2002)...........................................12

*United States v. Robertson*, 29 F. Supp. 2d 567 (D. Minn. 1998)...............................12, 20

*United States v. Ross*, 206 F.3d 896, 900 (9th Cir. 2000)........................................................8

*United States v. Smith*, 62 F.3d 641, 650-51 (4th Cir. 1995).................................................9

*United States v. Tucker*, 716 F.2d 576, 589 (9th Cir. 1983)................................................21

*United States v. Villapardo*, 259 F.3d 934, 938-40 (8th Cir. 2001) ....................................9

*Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948) .................................................................12

*Walker v. Caldwell*, 476 F.2d 213, 224 (5th Cir. 1973) ......................................................20

*Wanatee v. Ault*, 259 F.3d 700 (8th Cir. 2001)....................................................................11

*Weaver v. Massachusetts*, No. 16-240, slip op. at 3 (U.S. June 22, 2017) .........................8

<u>STATUTES</u>

18 U.S.C. § 2255............................................................................................................... 9

18 U.S.C. § 371...............................................................................................................5,7

18 U.S.C. § 1349 ……………………………………………………………………………7

<u>RULES</u>

Federal Rule of Criminal Procedure 33 ……………………………………………………….7,9

1

2

**MEMORANDUM OF LAW**

3

## I.    INTRODUCTION

4

Clifton Burch respectfully requests that this Court vacate his conviction and order the

5

government to reconvey their pre-trial plea offer of diversion, or in the alternative, order an

6

evidentiary hearing on Mr. Burch's ineffective assistance of counsel claim as to his prior counsel.

7

Such relief is warranted because Mr. Burch suffered prejudice as a result of prior counsel's

ineffective assistance during the pre-trial negotiations and trial proceedings.

8

Prior counsel gave Mr. Burch erroneous advice as to his sentencing exposure after a

9

conviction at trial, and misled Mr. Burch into believing that they had a winning defense that would

10

likely result in an acquittal and allow Mr. Burch to recoup his legal fees.  Trial, however, was nothing

11

like what prior counsel had described.  Mr. Burch discovered at trial that what his attorney had

12

described to him as a strong defense, was not even a viable defense against the conspiracy

13

charges.  Rather, counsel's lack of preparation and utter failure to grasp the key issues in the case

14

resulted in a complete breakdown of the adversarial process.  Tragically, if Mr. Burch had been

15

given competent advice about his sentencing exposure and his trial defense, he would have

16

accepted the government's diversion offer.

17

## II.    RELEVANT FACTS

18

19

On April 6, 2017, Clifton Burch was charged with one count of conspiracy to defraud the

20

United States Department of Energy in violation of 18 U.S.C. § 371 (Count Four, in eight-count

21

Indictment) along with Derf Butler, Anton Kalafati and Peter McKean.  The Indictment alleged that

22

Mr. Burch and his three co-defendants conspired with each other and an undercover agent (UC)[1]

23

to submit bids at predetermined prices in order to ensure that the UC would secure a contract with

24

the Lawrence Berkeley National Laboratory Building 84.

25

Mr. Kalafati was the first of the four defendants to plead guilty.  On March 9, 2018, he

26

entered a plea of guilty to one count of conspiracy to defraud the United States Department of

27

Energy.

28

---

[1] Under agent is referred to as "Individual A" in the Indictment.

On September 24, 2018, the government approached Mr. Burch and Mr. McKean with a plea offer – non-custodial resolution if both defendants accepted their offer.  The government indicated that this was offer was conditioned on Mr. Butler entering a guilty plea in the near future.  Per counsel's erroneous advice, Mr. Burch declined the government's offer of a non-custodial resolution.  Shortly thereafter, on October 18, 2018, Mr. Butler also pled guilty to one count of conspiracy to defraud the United States Department of Energy and one count of making a false statement.[2]

In October of 2018, the government provided Mr. Burch and Mr. McKean a draft plea agreement offering diversion.  The plea offer required both defendants to accept the deal.  Per prior counsel's erroneous advice, Mr. Burch once again declined the government's diversion offer and proceeded to trial.

On November 8, 2018, the government filed a Superseding Indictment chagrining Mr. Burch and Mr. McKean with an additional count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349.

Mr. Burch and Mr. McKean's trial began on February 4, 2019.  On February 12, 2019, shortly before the close of the government's case-in-chief, Mr. Burch requested a "Marsden Hearing," prompting the court to hold an *ex parte* proceeding to discuss Mr. Burch's concerns.  After this proceeding, Mr. Burch consulted with prior counsel and felt that he had no choice but to continue with prior counsel as his attorney, rather than try to represent himself at trial.

Mr. Burch testified the very next day with hardly any preparation by prior counsel.  Mr. Burch was the only witness to testify in his case-in-chief.   On February 20, 2019, the jury found both Mr. Burch and Mr. McKean guilty of Count One and Count Two of the Superseding Indictment.

Shortly after trial, Mr. Burch hired John M. Runfola and Naomi Chung to replace his prior counsel.  Mr. Runfola and Ms. Chung substituted in as attorney of record on March 1, 2019. In fact, Mr. Burch had contacted Mr. Runfola during trial, seeking to replace his prior counsel.  Mr. Runfola, however, declined to represent Mr. Burch at that time because he did not want to interfere

---

[2] The false statement offense was Count Five of the eight-count Indictment.  Mr. Burch was not charged in Count Five.

with prior counsel and Mr. Burch's attorney-client relationship in the middle of a trial.

Mr. Burch is currently set for sentencing on August 28, 2019 at 1:30 p.m. This motion for new trial is set to be heard on the same day as his sentencing.

## III.   **LEGAL STANDARD**

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Rule 33 "does not define 'interest[] of justice' and the courts have had little success in trying to generalize its meaning."  *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal."  *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992) (internal citations and quotation marks omitted).  "The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses."  *Id*.  If the court determines "that a miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination to another jury", *id.* at 1211-12, irrespective of "the abstract sufficiency of the evidence to sustain the verdict."  *Id*.  (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).  The decision "is within the sound discretion of the district court."  *Alston, 974 F.2d* at 1211.

## IV.   **ARGUMENT**

Mr. Burch is bringing a motion for a new trial based on prior counsel's profound and multifaceted prejudicial ineffectiveness before the district court prior to the judgment of conviction. Prior counsel gave Mr. Burch erroneous advice as to his sentencing exposure after a conviction at trial and misled Mr. Burch into believing that they had a winning defense that would likely result in an acquittal and allow Mr. Burch to recoup is legal fees.  However, trial was nothing like what prior counsel had described.  Mr. Burch discovered that what his attorney had described to him as a strong defense, was not even a viable defense against the conspiracy charges.  Rather, counsel's lack of preparation and utter failure to grasp the key issues in the case resulted in a complete breakdown of the adversary process. Tragically, if Mr. Burch had been given competent

advice about his sentencing exposure and his trial defense, he would have accepted the government's diversion offer.

### A.  Relevant Law

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. Amend. VI.[3]  "The right to counsel is the right to the effective assistance of counsel."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To prevail on an ineffective assistance of counsel claim, a defendant must show: (1) counsel's performance was deficient in that it "fell below an objective standard of reasonableness" under prevailing professional norms; and (2) counsel's deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687-88.

"[T]here are two ways of meeting the *Strickland* prejudice requirement.  A defendant must demonstrate either that the error at issue was prejudicial[4] *or* that it belongs to a denial of counsel, for which an individualized showing of prejudice is unnecessary."  *Weaver v. Massachusetts*, No. 16-240, slip op. at 3 (U.S. June 22, 2017) (Alito, J. concurring).

In general, ineffective assistance of counsel claims are reviewed in a collateral, post-judgment habeas corpus proceeding.  *United States v. Daly*, 974 F.2d 1215, 1218 (9th Cir. 1992).  However, "when the record . . . is sufficiently developed to permit review and determination of the issue," or "when the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel" the claim may be raised on direct appeal.  *United States v. Ross*, 206 F.3d 896, 900 (9th Cir. 2000).

Indeed, the Ninth Circuit has held that "when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and **at times should**, consider the claim at that point in the proceeding."  *United States. v. Steele*, 733 F.3d 894, 897 (9th Cir. 2013) (quoting *United States v. Brown*, 623 F.3d 104, 113 (2d Cir. 2010)

---

[3] *See also* Cal. Const., art. I, § 15*; In re Hardy*, 41 Cal. 4th 977, 1018 (2007).

[4] Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Under the *Strickland* standard, therefore, prejudice can be shown even where the government's evidence of guilt was "strong but not ironclad."  *Lord v. Wood*, 184 F.3d 1083, 1088 (9th Cir. 1999).

(internal quotes omitted) (emphasis added).  A district court need not "invoke an appellate court's rubric and require a defendant to use his one § 2255 motion to raise an ineffective assistance claim post judgment, particularly when the district court is in a position to take evidence, if required, and to decide the issue prejudgment."  *Steele*, 733 F.3d at 897; *see also Brown*, 623 F.3d at 113. This is particularly true when there is already evidence in the record indicating ineffective assistance of counsel.  *Steele*, 733 F.3d at 898.  The proper procedural avenue for defendants to raise a claim of ineffective assistance of counsel after conviction but prior to sentencing is through "a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33." [5]  *Brown*, 623 F.3d n. 5.

If the district court, in its discretion, chooses to review an ineffective assistance of counsel claim, it shall apply the *Strickland* standard.  *Steele*, 733 F.3d at 897; *see e.g., United States v. Hester*, No. 14CR388-MMA-5, 2017 WL 2972564, at *4 (S.D. Cal. July 12, 2017) (*Strickland* standard applies when district court considers ineffective assistance of counsel claim); *United States v. Logan*, 861 F.2d 859, 864 (5th Cir. 1988) (recognizing that some courts have applied a more lenient standard in deciding a new trial motion, but declining to do so based upon the Supreme Court's comment that the "principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial.") (quoting *Strickland*, 466 U.S. at 697).

### B.  Prior Counsel's Failure to Properly Advise Mr. Burch During Pre-Trial Negotiations Prevented Mr. Burch From Making A Reasonably Informed Decision Whether to Accept Plea Offer or Proceed to Trial.

The trial record in this case is riddled with instances of prior counsel's ineffectiveness, which is sufficiently developed to permit review and determination of Mr. Burch's ineffective assistance of counsel claim by this Court.  However, the ineffectiveness in this case was so

---

[5] *See e.g., United States v. Del Muro*, 87 F.3d 1078, 1080-81 (9th Cir. 1996) (remanding case to district court for consideration of IAC claim on Rule 33 motion); *United States v. Villapardo*, 259 F.3d 934, 938-40 (8th Cir. 2001) (district court properly granted new trial motion based upon ineffective assistance of counsel); *United States v. Smith*, 62 F.3d 641, 650-51 (4th Cir. 1995) ("A claim of ineffective assistance of counsel may be brought as a motion for new trial based on 'other grounds' under Fed. R. Crim. P. 33."); *United States v. Jensen*, CR-08-054-JLQ, 2010 WL 3809988 (E.D. Wash. Sept. 27, 2010)  (the court granted an IAC claim on a Rule 33 new-trial motion).

egregious that it resulted in a constructive denial of Mr. Burch's right to counsel.[6]  Thus, requiring Mr. Burch to wait for post-conviction relief is unnecessary and would further the injustice that he has suffered.  Indeed, the Ninth Circuit in *Steele* noted:

> Requiring a defendant to wait for post-conviction relief has several consequences, including that a defendant may serve months in prison waiting for post-conviction arguments to be heard.  Lengthy delays necessarily entail concomitant weakening of memories and aging of evidence.  Additionally, a defendant might be without representation in post-conviction proceedings but entitled to substitute counsel if the claim is heard before entry of final judgment.

*Steele*, 733 F.3d at 897 (citing *Del Muro*, 87 F.3d at 1080-81 (requiring appointment of new counsel when district court grants evidentiary hearing on ineffectiveness claim)).

> ### i.  Prior counsel's erroneous advice deprived Mr. Burch of his right to make a reasonably informed decision as to whether he should accept the government's plea offers or proceed to trial.

The *Strickland* standards apply to claims of ineffective assistance of counsel involving counsel's advice offered during the plea-bargaining process.  *Missouri v. Frye*, 566 U.S. 182 L.Ed.2d 379 (2012); *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2009); *Nunes v. Mueller*, 350 F.3d 1045, 1052 (9th Cir. 2003). "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler*, 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  Indeed, a defendant has the right to make a **reasonably informed decision** whether to accept a plea offer or proceed to trial.  *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (emphasis added).  Trial counsel must give the defendant sufficient information regarding a plea offer to enable him to make an intelligent decision.  *Id*. at 881.  And "where the issue is whether to advise the client to plead or not 'the attorney has the duty to advise the defendant of the available options and possible consequences' and failure to do so constitutes ineffective assistance of counsel.  *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. 1981).

Mr. Burch's decision to reject the government's offer of a non-custodial resolution and

---

[6] In contrast to Mr. Burch's circumstances, in *Steele*, the Ninth Circuit found that Steele's ineffective assistance claim was "broad-based and the evidentiary record to consider it was sorely lacking", noting that the district court expressed that there was " 'certainly nothing that occurred in the courtroom gave me any pause or concern in that regard.' "  *Steele*, 733 F.3d at 898.

subsequently diversion was based entirely on prior counsel's erroneous advice that if Mr. Burch was convicted at trial, he would likely be sentenced to home confinement.  Burch Decl. ¶4, 15. Prior counsel gave Mr. Burch further erroneous advice when he explained that in the *unlikely* event Mr. Burch was sentenced to jail[7], it would be minimal and certainly nothing compared to the 3.5 years in prison he did 20 years ago. Burch Decl. ¶4.  Based on prior counsel's statements, Mr. Burch believed that the difference between the government's offers and conviction at trial was only months of home confinement with a **very low risk of serving a few months in jail**.  Burch Decl. ¶4, 6, 15.  Furthermore, prior counsel never adequately advised Mr. Burch on how his sentencing guideline range would be calculated.  Burch Decl. ¶6, 15.  Counsel also never explained that there were variables such as "acceptance of responsibility", "obstruction of justice", and "loss amount", that would play a critical part in determining Mr. Burch's guideline range, and therefore, he never explained that the way in which those variables could negatively impact Mr. Buch's sentence after a conviction at trial.  Burch Decl. ¶6, 15.  And when a superseding indictment was filed more than two months before trial charging Mr. Burch with an additional count of conspiracy to commit mail and wire fraud, prior counsel failed to advise Mr. Burch as to the impact this additional charge may have on his guideline range.  Burch Decl. ¶17.  As a result, Mr. Burch was incapable of properly weighing the risks and consequences of his options which led him to repeatedly rejected the government's offers to settle his case without realizing **he could be facing serious prison time after a guilty verdict**.  In short, Mr. Burch was unable to make a "reasonably informed decision" about his case.

Prior counsel's conduct constitutes a clear case of ineffective assistance that satisfies the first *Strickland* prong.  In every criminal case where a defendant is considering a plea offer made by the prosecution, it is critical that defense counsel advise his/her client of the risks and possible consequences of rejecting the offer and proceeding to trial.  *See Wanatee v. Ault*, 259 F.3d 700 (8th Cir. 2001) (*affirming* 101 F. Supp. 2d 1189 (N.D. Iowa 2000)) (counsel was ineffective for

---

[7] While there is no option of jail versus prison as seen in state cases, prior counsel used the term "jail" rather than "prison" when discussing the possibility of sentencing in this case.  Given that the phrase is often used interchangeably, it seems this was a harmless error.

failing to advise defendant about felony-murder rule and as a result, defendant rejected the plea offer for second degree murder and was convicted of first degree murder).

Indeed, it is the defense counsel's duty to ensure that the defendant is making a knowing and informed decision about whether to accept or reject the prosecution's plea offer.[8]  *See, e.g.*, *United States v. Robertson*, 29 F. Supp. 2d 567 (D. Minn. 1998) (trial counsel rendered ineffective assistance of counsel by not advising his client to accept any of the plea negotiations offered by the government, which resulted in defendant receiving a sentence in excess of 90 years).  And while counsel will not be able to realistically advise the defendant on *all* the risks and consequences in existence, there is undeniably a duty to properly advise the defendant as to his/her sentencing exposure, including how it may change based on the circumstances – acceptance of a plea offer, entering an open plea, or conviction at trial.  *See, e.g., United States v. Day*, 285 F.3d 1167 (9th Cir. 2002) (counsel's erroneous advice caused the defendant to reject a plea offer which included a three-point reduction for acceptance of responsibility); *Boria v. Keane*, 99 F.3d 492, *clarified on reh'g*, 90 F.3d 36 (2d Cir. 1996) (counsel rendered ineffective assistance when he failed to advise his client of the advisability of pleading guilty and receiving one to three years and as a result, defendant was sentenced to 20 years to life.).  Indeed, there is no justification for prior counsel's erroneous advice regarding Mr. Burch's sentencing exposure after a conviction at trial, particularly when the difference between counsel's advice and reality was four to five-years in prison.  *See, e.g., Magana v. Hofbauer, 263 F.3d 542 (6th Cir. 2001)* (Court found ineffective assistance when counsel incorrectly informed defendant that he could not receive consecutive sentences and that he would get ten years whether he went to trial or not, causing defendant to reject the plea offer)*; United States v. Quiroz*, 228 F. Supp. 2d 1259 (D. Kan. 2002) (counsel gave erroneous advice regarding the defendant's possible sentences when he sent defendant a letter detailing the penalties for possessing marijuana when defendant was charged with possessing cocaine – defendant rejected the plea offer because he thought the difference

---

[8] While there is no per se rule that effective counsel must recommend whether or not to accept a plea offer, counsel should make an independent examination of the case and offer an informed opinion as to what plea should be entered.  *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948); *see also Boria v. Keane*, 99 F.3d 492 (2d Cir. 1996) (conviction vacated for failure to express opinion defendant should accept offer).

between going to trial or accepting the offer was a matter of six months.).  And it is particularly troubling that prior counsel not only provided erroneous advice as to Mr. Burch's sentencing exposure, but counsel advised against accepting the government's plea offers and insisted on going to trial.  Burch Decl. ¶7, 9, 11, 16; *see*, *e.g.*, *Turner v. Tennessee*, 858 F.2d 1201 (6th Cir. 1988) (*affirming* 664 F. Supp. 1113 (M.D. Tenn. 1987)), *vacated on other grounds*, 492 U.S. 902 (1989) (defendant was erroneously advised by counsel to turn down a plea offer for simple kidnapping, a two-year sentence, and instead was convicted at trial receiving a life imprisonment plus forty-years on each kidnapping count); *State v. Fritz*, 569 N.W.2d 48 (Wis. Ct. App. 1997) (court found ineffective assistance where trial counsel advised defendant to reject the plea offer and go to trial even though he believed that defendant did not have a "triable" case and no defense unless he lied on the stand concerning statements he made previously).

The second *Strickland* prong – prejudice – is also satisfied here.  In order to show prejudice in the context of plea offers, a defendant must show that *but for* his counsel's erroneous advice, there is a *reasonable probability* that he would have accepted the plea.  *See Day*, 969 F.2d at 45 n.8 (noting that "*Strickland v. Washington* does not require certainty or even a preponderance of the evidence that the outcome would have been different with effective assistance of counsel; it requires only [a] reasonable probability that that is the case").  The relevant focus is on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process."[9] *Wanatee*, 259 F.3d at 703.  Moreover, a defendant who rejects a plea offer due to improper advice from counsel may show prejudice under *Strickland* even though he ultimately received a fair trial.  *Id.*; *see also Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995).  To establish prejudice, a defendant must show that he would have accepted the plea but for counsel's advice and that had he done so he would have received a lesser sentence.[10]  *Id.*

---

[9] *See*, *e.g.*, *Wantaee*, while defendant repeatedly expressed unwillingness to cooperate with government and be branded a "snitch", court found reasonable probability that he would have accepted the plea agreement and cooperated if he had been properly advised of the law and had known that he could receive some real benefit in exchange for cooperation.

[10] It should also be noted that the court does not have to conclusively find that defendant would have accepted the plea offer in order to find prejudice and grant relief.  *See Megana*, 263 F.3d at 550 (holding that such a standard places too great a burden of proof on the defendant to show prejudice and is contrary to clearly established Supreme Court precedent).

Here, Mr. Burch rejected the government's plea offers and opted to proceed to trial because (1) prior counsel advised him that the only downside of going to trial would be the risk of being sentenced to home confinement after a guilty verdict, and (2) prior counsel advised him not to accept the plea offers.  This was erroneous and devastatingly deficient advice.  If Mr. Burch had been given competent advice – that a guilty verdict could mean four to five-years in prison, not home confinement, and that trial would probably result in a guilty verdict – *he would have accepted the government's non-custodial resolution or diversion offer*. Burch Decl. ¶6, 7, 15, 16.

> ### ii.  Given the overwhelming evidence against Mr. Burch and the potential penalties involved, prior counsel was ineffective for advising Mr. Burch to reject the government's plea offers and to proceed to trial without a valid defense against the charges of conspiracy.

Given the overwhelming evidence against Mr. Burch and the potential consequences of a guilty verdict, prior counsel should have advised Mr. Burch to accept the government's offer of a non-custodial resolution or diversion.  Mr. Burch was charged with two counts of conspiracy involving William Myles (the UC), Derf Butler, Anton Kalafati, and Peter McCkean.  And there was no question that if Mr. Burch's case went to trial, the main piece of evidence would be an audio-video recording of the July 30, 2013 meeting between the UC, Mr. Butler, Mr. Kalafati and Mr. Burch, which showed *all four individuals* discussing and agreeing to what appears to be a bid-rigging scheme.

However, prior counsel misled Mr. Burch to believe that he had a strong defense, even though the government had informed prior counsel that all three individuals that participated in the July 30th meeting with Mr. Burch would testify at trial against Mr. Burch.  Since the UC was working for the government, he would obviously testify that Mr. Burch was a co-conspirator who agreed to participate in the scheme.  As for Mr. Butler and Mr. Kalafati, they both pled guilty to conspiracy well before Mr. Burch's trial[11] and based on their plea colloquy it was evident that they would not only confess to their own involvement as a co-conspirator in the bid-rigging scheme, but would also implicate Mr. Burch as an active and willing co-conspirator.  Thus, for Mr. Burch to have a chance at winning his trial, prior counsel *needed* to craft a defense that would effectively invalidate

---

[11] Anton Kalafati entered a plea of guilty on March 9, 2018.  Derf Butler entered a plea of guilty on October 18, 2018.

the testimonies of the UC, Mr. Butler, and Mr. Kalafati, alleging that they, including Mr. Burch, discussed and agreed to participate in the bid-rigging scheme.  Given that Mr. Burch was the only person at that meeting that could argue otherwise, it was critical that prior counsel prepare Mr. Burch for his testimony at trial.  This never happened.

On February 12, 2019, the day before the government rested its case-in-chief, Mr. Burch requested a "Marsden hearing" in the presence of the jury. RT 861:24-25; 862:2; Burch Decl. ¶19. Mr. Burch disclosed to this Court that there was a complete breakdown in communication with his attorney and that his attorney had yet to prepare him for his testimony which would likely occur the next day:

> So right now I have no confidence in my legal representation.   We haven't discussed my defensive strategy or communicated to me what that is or thereof.  I have no trial preparation, no witness preparation.
>
> As he stated to the prosecution, he doesn't even know if I'm going to testify or not. He hasn't let me know if I'm going to testify or not.
>
> . . .
>
> I don't have the confident that we can pull this thing off today.  **So my thing is, if I'm supposedly going to hit the witness stand, where's my preparation at?**

RT 895:25 – 896:1-9; 903:2-4 (sealed proceedings) (emphasis added). Mr. Burch did in fact testify the very next day, but he received no meaningful preparation by prior counsel.  Burch Decl. ¶22. Mr. Burch was so worried about his attorney's failure to prepare him to take the stand, that he typed up direct examination questions and emailed them to counsel at 4:19 a.m. the next day. Burch Decl. ¶22.  It is unclear how prior counsel expected Mr. Burch to be able to testify without any preparation on how to rebut or at the very least mitigate the audio-video recording as well as the testimonies of the UC and Mr. Kalafati.  Prior counsel's ineffectiveness destroyed any chance Mr. Burch had at a fair trial.

From the start, prior counsel misled Mr. Burch that they had a strong defense that could result in an acquittal.  Despite prior counsel's confidence, he refused to explain to Mr. Burch what their defense consisted of. Burch Decl. ¶16.  And when co-defendant Peter McKean's attorney asked prior counsel what defense Mr. Burch intended to purse at trial, his response was short and simple – it's an "aggressive defense".

In fact, it is evident from the record that prior counsel did not properly understand the facts of the case, did not understand the government's arguments, and ultimately did not have a viable defense against the conspiracy charges filed against Mr. Burch.  For example, prior counsel was fixated on showing that Mr. Burch's bid amount of 7.1 million was reasonable and that the square footage of the building was misrepresented.  However, these arguments completely missed the government's contention which was that Mr. Burch knowingly agreed to participate in the bid-rigging scheme and he submitted a bid that was higher than the bid of the person intended to win the contract; therefore, the reasonableness of his bid amount and the mistaken square footage issue were essentially irrelevant.  The court had to interject during prior counsel's cross-examination of Agent Ethan Quinn regarding the square footage of the building:

> **ROY:** Agent Quinn, when you realized that 40,000 square feet for the building was not the proper square footage of the construction part, did you report to your supervisor that it had changed to 7,000 square feet?

> **QUINN: I don't know why you would. The whole thing is a prop.  The question is whether these individuals submit bids directed by Mr. Butler and collude to submit** –

> **COURT:** Actually, again, on this whole line of questioning, maybe you can explain to me.  The bid that I'm looking at, that your client purportedly submitted, says 7,000 square feet.

> **MR. ROY:** Correct.

> **THE COURT:** Okay. 7,000 square feet.  So what difference does it make whether initially it said 40,000 or 100 million square feet?  It says here $7 million for 7,000 square feet. That's what the bid was. Okay.  Now, if it's your belief that that was a genuine bid, that's fine, of course. But we don't have to go back and forth on the 40,000 because this wasn't a bid for 40,000; it was a bid for 7,000.  So I don't want to spend a lot of time talking about that which is not at issue in the case. What's at issue in the case is … the 7 million bid for the 7,000 square feet, among other issues. But I'm saying that's what I thought the facts show, uncontradicted facts.

RT 484:18-25 - 485:1-18 (emphasis added).

Similarly, the record shows that prior counsel did not fundamentally understand the government's contention:

> **THE COURT:** -- 7.125, [Mr. Burch] could have not done the work for 7.125. Is that the --

> **MR. ROY:** That's the Government's contention.

1    THE COURT: No, it's not.

2    MR. FRENTZEN: I didn't say that.

3    THE COURT: Matter of fact, the Government's
     **contention is he could have done it for about 4 million.** … this is now the third
4    time I've heard this miserable case, and you're telling me that the Government is
     saying to you that he couldn't have done 7,000 square feet at … 7.1 -- whatever
5    that amount is?

6    MR. ROY:  They're saying that the bid was not properly -- it wasn't a proper takeoff.

7    THE COURT:  Well, that's certainly true. That's certainly true. **What [the**
     **government is] saying is that this work could have been done for 4 million**
8    **or 5 million, and the only reason he put 7 million in there was because they**
     **all agreed to bid more than Mr. Myles bid.** That's right. Your expert isn't going
9    to say that's wrong.

10   MR. FRENTZEN: The Court is absolutely correct. Yes, we've gone a little bit down
11   a rabbit trail.

12   RT 1139:1-22 (emphasis added).

13        Moreover, prior counsel had difficulty understanding key concepts of Mr. Burch's case
14   which required the court to interject yet again during his cross-examination of William Myles:

15   MR. ROY: [repeats previously asked question to MYLES]
16
17   "QUESTION: Was there another reason as well? Did you explain that they should
     go higher so that you could justify your own number?"

18   And your answer was:

19   "ANSWER: Well, one way, but we needed three bids and they needed to be -- like
20   they used the word 'comparable,' but we were getting competitive bids, basically.
     So they had to be competitive and spread apart. That's why we got 5.7, 5.9, 6.1,
21   make it look competitive."

22   Now, based on those numbers, Mr. Burch's bid of 7.1 was not competitive; isn't
     that correct?

23
24   MYLES:  What makes it not competitive?

25   MR. ROY: Well, because you said that you were looking for numbers close, in part,
     5.7, 5.9, and 6.1; and Mr. Burch's bid was a million dollars --

26   **THE COURT: Counsel, I think that he's using "competitive" in the way that**
27   **there has got to be competition for the bid, not that there has to be a number**
     **that would clearly be accepted or very close to being accepted. That's not**
28   **what he has testified to.**

**MR. ROY:** Your Honor, you're incorrect. That is what he testified to specifically.

**THE COURT:** Okay. All right. Okay. Then I'm incorrect. And it's up to the jury to determine what is meant by "competitive."

**MR. ROY:** Well, he also said "comparable."

**THE COURT:** Whatever. It's up to the jury to make those determinations –

RT 878:13-25 – 879:17 (emphasis added).  Unfortunately for Mr. Burch, the court's description of "competitive" was correct and prior counsel was wrong.  As the court correctly tried to explain, in a conspiracy case involving a bid-rigging scheme, prior counsel's line of questioning is irrelevant because the government only needs to show that the conspirators, including Mr. Burch, all submitted a bid at a higher number than the person intended to win the contract, i.e. William Myles.

Despite the court's efforts, prior counsel's ineffectiveness continued and his confusion as to his client's defense became more obvious again during his exchange with the court regarding the use of a defense expert to testify to the "square footage" issue:

**THE COURT:** And the testimony that – if you had an expert come in and say, you know, you couldn't have done this job for 4 million or 5 million or 6 million, you had to have – it had to be at least 7 million, that makes it, quote, on that issue, a legitimate bid.  That's not what [your expert] is going to say.

**MR. ROY:** Well, he may say it when he –

**THE COURT:** What do you mean, "he may?" That's what we call a detailed offer of proof. Is he going to say it?

**MR. ROY:** I don't know, Your Honor.

**THE COURT:** We'll all be surprised tomorrow. You're not going to put him on unless that's his testimony. And even then I have to think about it, but go ahead. **That's not this case. You're fighting some other case. You're presenting evidence of some other case. Their case is not that. It's not that your client couldn't have done the work for 7 million**.

I assure you your client could have done the work for $7 million.  Nobody here thinks he couldn't have.  And you don't need an expert to say he could have because that's not an issue.

The issue isn't whether he could have done it at 7.  The issue is because, in fact, he probably could have done it at somewhere between 4 and 5.  So it's all just a big profit, which, terrific, God bless, people should make profits.
I'm not against profits.  **But that's not this case.  Has nothing to do with this case.**

1
2
3
4
5
6
7
8
9
10

**This case has to do with whether or not your client and Mr. Goodman's client bid a particular number knowing that the – that there was going to be another bid at a lot lower number, and whether that lot lower number could have been, was a real bid.**

. . .

And the question is whether – whether or not the work that is set for the in the plans could have been done at some particular price. And unless you had an expert to come in and say it couldn't have been done at 4, couldn't have been done at 5, couldn't have been done at 6, without losses it could have been at 7, but that's not what your expert is going to say.[12]

**MR. ROY:** Well, I will know this evening when –

**THE COURT:** Well, I'll state you're not going to put him on the stand unless his subject, his issue, his testimony is relevant to the issues in this case, in connection with the criminal activity, you see.

11
12
13
14
15

RT 1140:10-25 – 1142:1-6 (emphasis added).  Again, the court had to point out to prior counsel what the government's case was in respect to the conspiracy charges against Mr. Burch because counsel simply did not seem to understand.  Prior counsel's inability to grasp this key point throughout the entire trial was *patently unreasonable*, particularly in light of the fact that counsel advised Mr. Burch that they had a strong defense and should proceed to trial.

16
17
18

Ultimately, prior counsel was unprepared to effectively defend Mr. Burch at trial – the defense he seemed to be arguing was unfeasible, but more often than not, it was simply unclear to everyone in the courtroom what Mr. Burch's defense was.

19

**MR. ROY:**  I anticipate requesting a Rule 29 motion and you deciding in our favor.

20
21

**THE COURT:**  Just in the unlikely event, Mr. Roy, that I either deny the Rule 29 motion or defer a ruling on it, **what's your defense?**

22

**MR. ROY: I haven't decided yet,** Your Honor.

23

**THE COURT:** Well, now, wait a minute. Are you going to call any witnesses?

24
25
26
27
28

---

[12] On several occasions, Mr. Burch indicated to prior counsel that they needed to get estimates from outside contractors regarding what the project was worth.  Given the court's comments regarding the defense expert, Mr. Burch realized that this evidence could potentially help corroborate his bid of 7.125.  Prior counsel, however, did nothing.  After trial concluded, Mr. Burch went out on his own accord and found three reputable contractors who did their own takeoffs based on the blueprints in this case – all three bids were higher than Mr. Burch's.  Burch Decl. ¶23.  Even after the court specifically told prior counsel that this issue was a relevant point of contention in the case, counsel did nothing.  What's worse is the fact that counsel seemed to not even understand what the court was telling him.

1          **MR. ROY: I haven't decided yet**, Your Honor.

2   RT 716:25 – 717:1-8 (emphasis added).

3          Prior counsel's erroneous advice to reject the diversion offer and proceed to trial constitutes

4   ineffective assistance of counsel under *Strickland*'s first prong given the overwhelming evidence

5   against Mr. Burch and the fact that he had no viable defense to the charges of conspiracy.  It is

6   clear from the record that counsel did not competently understand the government's case or any

7   of the arguments they made during trial.  More egregious however, is the fact that Mr. Burch did

8   not have a viable defense against the charges of conspiracy when counsel repeatedly said they

9   did.  Mr. Burch relied on counsel's experience and trusted that his attorney would competently

10  advise him in all matters related to his case.  Indeed, a defense attorney has an absolute duty to

11  put his client's interests before his own.  *United States v. Robinson*, 29 F.Supp.2d 567, 571 (D.

12  Minn. 1998).  This means that counsel must render competent advice in determining whether their

13  client should accept a plea or proceed to trial.  Thus, the decision whether to plead guilty or contest

14  a criminal charge is ordinarily the most important single decision in any criminal case.  While the

15  decision must ultimately be left to the defendant, "counsel may and *must* give the client the benefit

16  of counsel's professional advice on this crucial decision."[13]   Effective assistance of counsel

17  includes counsel's informed opinion as to what pleas should be entered into.[14]  *Walker v. Caldwell*,

18  476 F.2d 213, 224 (5th Cir. 1973); *Jones v. Cunningham*, 313 F.2d 347 (4th Cir. 1963), *cert. denied*

19  375 U.S. 832 (1965).  Prior counsel's failure to realize that Mr. Burch was in no position to proceed

20  to trial given the evidence against him rendered his performance ineffective and unreasonable.[15]

21  _____

22  [13] *Boria v. Keane*, 99 F.3d 492, 496-97 (quoting Anthony G. Amsterdam, in Trial Manual 5 for the
    Defense of Criminal Cases (1988)).

23

24  [14] In *Cunningham*, Chief Judge Sobeloff stated, "Of course, it is not for a lawyer to fabricate
    defenses, but *he does have an affirmative obligation to make suitable inquiry to determine whether*
    *valid ones exist*.  Such a duty is imposed for the salutary reason that prior to trial an accused is
25  entitled to rely upon his counsel to make an independent examination of the facts, circumstances,
    pleadings and laws involved and then to offer his informed opinion as to what plea should be
26  entered." (internal quotations omitted).

27  [15] *See Robinson*, 29 F.Supp.2d at 567 (court noted that given the overwhelming evidence
    presented at trial against the defendant, including a confession and testimony from his co-
28  defendants, and the potential penalties involved, counsel provided ineffective assistance by not
    advising his client to accept any of the plea negotiations by the government).

The second prong under *Strickland* is also satisfied here.  The Supreme Court has held that the United States Constitution requires the assistance of counsel in all criminal prosecutions. *Gideon v. Wainwright*, 372 U.S. 335 (1963).  When a defendant is denied the assistance of counsel, prejudice is presumed.  *See United States v. Cronic*, 466 U.S. 648 (1984).  A denial of counsel occurs when a defense attorney entirely fails to subject the prosecutor's case to "meaningful adversarial testing." *Id.* at 657.  Here, prior counsel failed to subject the government's case to meaningful adversarial testing when he advised his client to proceed to trial even though he had no viable defense to the charges against his client.  The record clearly indicates that there was a lack of adversarial testing of the government's witnesses and evidence because prior counsel did not understand the facts of the case or the government's contentions.  This case should have ended with a non-custodial or diversion plea deal; however, due to prior counsel's failure to render competent legal advice, Mr. Burch is now facing four to five-years in prison.[16]  Given how ineffective prior counsel was during his representation of Mr. Burch, his advice to go to trial was prejudicial.[17]

### C.  The Appropriate Remedy for Trial Counsel's Failure to Properly Advise Mr. Burch During Pre-Trial Negotiations is to Require the Government to Reinstate Its Diversion Offer or Order an Evidentiary Hearing.

Mr. Burch contends that had he been adequately advised of the applicable guideline range, the strength of the government's case against him and the fact that his attorney did not have a viable defense prepared, he would have accepted the government's diversion offer instead of proceeding to trial.

From the beginning, prior counsel failed to adequately advise and competently represent Mr. Burch, rendering a complete and total breakdown of the adversarial process.  Counsel repeatedly gave erroneous advice to Mr. Burch when it came to the plea agreement, their chance

---

[16] The four to five-years is based off the guideline calculations outlined in the draft presentence investigation report.  If the court denies this motion, Mr. Burch still intends to challenge the PSR's guideline calculations (assuming they do not change in the final draft).

[17] It should be noted that, "[w]here it is demonstrated that counsel was ineffective, [the court is] not concerned with the amount of evidence presented to prove the guilt of the defendant.  Instead, [the court is] required to determine whether counsel's errors and omissions may have denied him a fair trial." *United States v. Tucker*, 716 F.2d 576, 589 (9th Cir. 1983).

at winning at trial, and their defense. These series of errors were extremely prejudicial to Mr. Burch's chance at a fair trial and now, he must suffer the consequences.

Mr. Burch respectfully requests reconveyance of the original diversion offer by the government or in the alternative, an evidentiary hearing so that he may present evidence consistent with the assertions contained in this motion. Mr. Burch is confident that if such a hearing is held the court will conclude that prior counsel did not provide effective assistance to Mr. Burch during pretrial negotiations which prevented him from making an informed decision as to whether to accept the government's plea offer or proceed to trial.

In circumstances where the original plea offer is significantly less serious than what defendant is convicted at trial for, "the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal."[18] *See Lafler*, 566 U.S. at 171. The court then has discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed. *Id.* The court may also conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea. *Id.*

This court has authority to conduct such an evidentiary hearing before the imposition of judgement. *See Steele*, 733 F.3d at 897 (holding that "when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding.") (quoting *Brown*, 623 F.3d at 113 (2d Cir. 2010); *see also United States v. Del Muro*, 87 F.3d 1078 (9th Cir. 1996) (district court held an evidentiary hearing on defendant's prejudgment ineffective assistance of counsel claim).

We acknowledge that the court has discretion in determining whether to interrupt the prejudgment proceedings to inquire into the merits of an ineffective assistance of counsel claim. That decision may depend on whether the court would need to relieve the defendant's attorney or appoint new counsel in order to properly adjudicate the merits of the claim. It may also depend

---

[18] The Supreme Court stated that "Sixth Amendment remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interest."

on the existence of evidence already in the record indicating ineffective assistance of counsel. *Steele*, 733 F.3d at 898.  Here, Mr. Burch's prior attorney has been replaced and there is clear and concrete evidence in the record demonstrating counsel's ineffective assistance.  Therefore, Mr. Burch respectfully requests that the court either order the government to reconvey the diversion offer, or alternatively, order an evidentiary hearing.

## V.    <u>CONCLUSION</u>

Based upon the foregoing authorities and analysis, Mr. Burch respectfully requests this Court to vacate his conviction and order the government to reconvey the diversion offer, or in the alternative, order an evidentiary hearing.

DATED:  August 8, 2019                    Respectfully Submitted,


                                          ____/s/_____

                                          JOHN M. RUNFOLA
                                          Attorney for Clifton Burch


                                          ____/s/_____

                                          NAOMI CHUNG
                                          Attorney for Clifton Burch